Jason Stewart et al. Mr. Johnson, you have the floor. Jason and Christy Stewart were here to request that this court request the determination of the IRS appeals function in a collection due process proceeding. And your Honor, just as background to make sure that the court understands where this case was procedurally, when the actions occurred, that we take as a violation of the rules. A taxpayer's case starts with the IRS in a collection matter before a person called a revenue officer who is assigned to collect. And during the course, the taxpayer may take an administrative appeal up into the IRS appeals function for the IRS appeals function to render a decision on the correct mode of collection. The taxpayer is typically seeking a deal. It could be an installment agreement or write down of the taxes, whatever. In that appeal to the IRS appeals function, the ex parte rules apply to the appeals function through the revenue procedure that the parties have cited. And the idea is that the IRS appeals officer who's making the determination should not be having communications with others within the IRS concerning the case that might taint that appeals officer's determination. Basically, a standard ex parte analysis applies. And what this case has to do with is something called the... When the revenue officer has completed his or her function and it goes up on the administrative appeal, there is an internal IRS document that he creates and transmits up administratively. And this is called the case history. And this is a document that the taxpayers do not receive, do not have access to. And part of what the revenue procedure tries to do is to ensure, with respect to ex parte, that the revenue officer doesn't use this case history to sort of stuff it with communications to the appeals officer that are going to get transmitted up ex parte without the taxpayers being aware. Counsel, I'd like to ask a question. Why doesn't... I'm getting some feedback here, Judge Strauss. Are you getting that as well? I am getting a little bit of feedback. I think... Is everyone muted, would be my question. I think... Well, I will mute myself just in case it's coming from my side, but hopefully we can get that resolved. Okay. Why doesn't section 2.034D apply here? And it says, in part, it is permissible to contemporaneously include statements dot dot dot that are pertinent to the originating functions consideration of the case. That seems to apply here, even if the substance of those comments would be prohibited otherwise. I think one of the government's arguments is these were contemporaneous statements that are admissible under 2.034D. Right, Your Honor. And I think if you look at the language of the revenue procedure, frankly, it's kind of a mess and it has some contradictory provisions. The revenue procedure also says, and the revenue officer shall not include gratuitous remarks. And I think if you read the various provisions, I think if the government's point on that clause you just read were taken literally, then there would be no ex parte. Anything could potentially be in there. I think if the court looks at the language of the revenue procedure as a whole, the whole idea is to establish an ex parte rule. And I know the government would say it's not the same as would apply with the court, and that's correct. But to establish an ex parte rule where things are not supposed to come in that are not administrative or ministerial, and certainly things are not supposed to come in that, as in this case, disparage the other side and try to create a picture of the other side, in this case as uncooperative. In the main case that we cite, the Drake case, the revenue officer said, well, what the attorney is doing is making a mockery of the court. You would agree that the letter and the notes are not that bad, though, in this case, right? I mean, it was basically uncooperative, I think, was the word. And there was some reference to he was asked to leave your office, I think. Yes, and for the record, I'm transmitting from the scene of the crime that is at discussion in this case. Yes, Your Honor, I agree. In a sense, this case is not, quote unquote, that bad. And perhaps in some sense, as opposed to the Drake case, the facts here are not as bad as can be in other cases. But that doesn't mean it still didn't cross the line. And, Your Honor, what I find extraordinary here is that, as in the Drake case, where the revenue officer put a full memorandum into the case, it's really odd here. And it's obviously facilitated these days by the change in technology. The revenue officer actually uploaded, counsel to me, criticizing me, uploads the whole letter into the case history. He didn't just sit there and tap out, you know, there was a meeting. They did not provide the documentation, something like that. He really puts the color in there. And I think at that point, overall, looking at the totality here, the revenue officer has crossed the line. What role, counsel, on that point? So the internal revenue manual, I think it's 5.1.10.3, paragraph 9. It basically talks about or requires the revenue officers to create a contemporaneous account of interactions with the taxpayer or his or her representative. And so one could argue that, and maybe this is where your colorful answer comes in, that the communications here were just too colorful. But don't you agree that he had some duty to memorialize his interactions with you on the day that he came in? Yes, absolutely, Your Honor. And I think it is kind of interesting because I think the color issue is kind of what we're talking about. I mean, we're talking about, again, maybe this is not as bad as in some other cases. But to put in the case history, and I met with that in his office, and he grabbed me by the scruff of the neck and threw me out. And, you know, that's what actually influences an IRS appeals officer who otherwise has no contact with this case, doesn't know who the taxpayer or counsel are. And that appeals officer is reading about this horrible conduct. Yes, it is the color. If the revenue officer had just sat and neutrally entered in, went to the office of Mr. Johnson and interacted, asked for documentation, he asserted that legally he was not obligated to provide it, something along those lines would have been just fine. And yes, the revenue officer would have had a duty under the Internal Revenue Manual to make those statements. I'm sorry. Counsel, at the appeals hearing, the appeals officer asked you, as I recall, the record reflects, about your initial exchange. Why isn't that your opportunity at that point? Aren't you on knowledge there that the RO has communicated arguably ex parte information? All that's really required is an opportunity for you to respond, I think. Why wasn't that sufficient to put you on notice that something at least had been communicated about that first meeting? Right. And thank you, Your Honor. And this is a bit awkward because I am the actual attorney as opposed to discussing sort of what a reasonable attorney would interpret. But I think if Your Honor looks at that comment that's in the record, the appeals officer said something along the lines of, hey, what happened with you and the revenue officer? And that was the limit of the comment. I would say, Your Honor, that that didn't put the attorney reasonably on notice that all of this stuff was in the case history. And actually, just to speak subjectively, Your Honor, we obtained the full case when it went to the tax court. And myself, I was subjectively rather surprised at all of the stuff that was in there. I thought the comment was an unusual one. I realized I'm sort of testifying right now, Your Honor. But I think objectively that that statement wouldn't, doesn't cure and doesn't give notice of everything that got into the case history. Your Honor, if I may, indeed. So, again, we take the position that the case history in this circumstance, that the revenue officer crossed this line. He put these things into the case history. And I submit, I think we can plainly read it, that there was likely an intent here. The revenue officer didn't feel like he'd been treated correctly. He felt like some rights or some rules had been violated by the attorney. And he had put that in there with the intent that it would, one way or another, sway the appeals officer. It's hard to imagine why a government worker would take all that trouble to actually scan up actual letters and put them into the case history. Again, Your Honor, as we put forward in the briefs, we think Drake is directly on point. I think reading the language of the tax court's decision in this case, I think as we put in the briefs, the tax court more or less came out and said, well, the revenue officer didn't specifically direct a result. The tax court's language goes a little back and forth on the disparagement issue. But I don't think that the tax court really took the disparagement analysis of the prior Drake course sufficiently seriously and did not really address that separate aspect. And we would, even if the revenue officer does not specifically direct a result, if the revenue officer disparages one party in that case history, that's enough, even if there's not a directed result. And of course, Your Honors are fully aware that it would be problematic before a court if a police officer were merely to disparage a defendant in a communication that ended up with the court ex parte. Just the sense of general ex parte principles, that would be a violation. And I think I'll leave anything further to rebuttal, Your Honors. Thank you. You may do so. Ms. Bradley, we're ready for your argument. Good morning, Your Honors. May it please the court. I represent the commissioner. The tax court here correctly rejected taxpayers' argument that revenue officer Wagner's notes that were recorded in the administrative file constituted an improper ex parte communication. There's no dispute in this case that Rev Proc 2012-18 controls. Here, the tax court correctly found that the revenue officer's contemporaneous notes in the administrative file that taxpayers' power of attorney, Mr. Johnson, was not cooperative, was not considered to be an improper ex parte communication under Section 203-4D that the court referenced this morning. Those notes were made pursuant to his duties as a revenue officer under the Internal Revenue Manual provision. May I ask you a question about a different regulation? I'm looking at 2.03-3D, which is under examples of communications that are prohibited. In subsection D says discussions of the originating functions views concerning the level of cooperation or lack thereof is prohibited. And I'm looking at the notes uploaded, and so it's prohibited to talk about lack of cooperation. And the uploaded notes say POA was uncooperative. Why doesn't that fall directly under that specific regulation that identifies the cooperation of counsel is not to be discussed? Well, again, I acknowledge that provision in the Rev Proc, but the commissioner takes the position that the Rev Proc dealing with notes contemporaneously made in the administrative file takes precedent over that. Isn't that essentially allow all of these impermissible communications to be included in the administrative file if they're done quickly? Not necessarily. And again, the Rev Proc provides that whether or not the revenue officer had the intent to affect the outcome of the appeal by the settlement officer. I would submit that typically when a revenue officer visits a taxpayer or their power of attorney, it's going to be relative whether or not the power of attorney or taxpayer was cooperative. Again, here it's really in taxpayer's best interest that they do cooperate with the revenue officer in an attempt to actually get a resolution. That may be and it may be the revenue officer makes a record of that, but I think the regulation may suggest that's fine, but it cannot be uploaded to the administrative record in order to preserve the impartiality of the appeals process. But again, I would suggest that uploading the letter as part of the case history is part of the revenue officer's function to document what happened in the case. And that way, by having the letter there, which he contemporaneously uploaded on July 28th, just evidence exactly what the history was in this case. And again, I would suggest that it was in taxpayers and counsel's best interest to cooperate with the revenue officer in order to. I have one more question and I'll let you move on here. The subsection 3D there talks about discussions of the originating functions views. Do you have any thoughts on whether uploading a letter and some notes are discussions? I don't think they're discussions again. I think if you actually look at the documentation in the administrative record, it appears, as Mr Johnson said, the revenue officer was documenting, you know, I showed up at the office. Nobody was here. Then Mr Johnson acknowledged his presence. They went into the conference room, and I don't think it's a discussion of the underlying merits here of the liability. And again, here, the taxpayers itself reported that they had a liability for 2015 and 16 in excess of $300,000. So there's no question about that. And taxpayers just were looking for a collection alternative. And in order to evaluate whether a collection alternative would be appropriate, the revenue officer, the settlement officer needed to understand what taxpayers finances were, their employment status and their assets. And in this case, there's no dispute that taxpayers are not challenging the conclusions of the settlement officer here that they weren't entitled to any one of their collection alternatives. The whole case resolves around whether or not the notes that were admittedly contemporaneous in the administrative file, whether or not that was prohibited ex parte. And again, the revenue procedure has multiple exceptions to that rule. And there's nothing here that taxpayers have established that the revenue officer intended to influence the settlement officer's determination as to whether or not to permit taxpayers to have a collection alternative. Here again, once it got to the appeals office, which was several months, I believe it was in November after that initial contact on July 28th. At that time, when it got to the settlement officer, as Judge Kobus pointed out, the settlement officer was very forthright. There was nothing hidden, asked whether or not, you know, and why taxpayers couldn't resolve the matter with the revenue officer. The settlement officer was just trying to understand the procedural history as to how it got to his office and for his determination. And the settlement officer on multiple occasions made it clear to Mr. Johnson that he needed to provide the requested financial information, the collection information statement, bank records, and other information so that the revenue officer could make a determination whether or not taxpayers should get a collection alternative to the lien and the proposed levy. And there's no dispute here from taxpayers that the determination that they weren't entitled to a collection alternative is improper. Here, there's nothing in the record that indicates that the independence of the settlement officer was in any way compromised during the hearing. In fact, the settlement officer had several conversations with Mr. Johnson regarding whether or not taxpayers would qualify for lien withdrawal or an installment agreement. And, in fact, they, you know, on the objective facts of the taxpayers' financial information, they did not qualify for any sort of a collection alternative. So here, the commissioner takes the position that the tax court correctly determined that the Office of Appeals didn't abuse its discretion in sustaining the lien and the proposed levy to collect taxpayers admitted in excess of $300,000 liability. And the commissioner respectfully requests that this court affirm that decision. How unusual is it for revenue officers to include statements like this in the case file? Is this something that happens with some regularity, or is this an unusual case in your experience? Well, in my experience, I would have to say this is fairly typical. And I guess my position on that is backed up by the fact that the Court of Appeals generally haven't seen any of these type of issues. The D.C. Circuit, I believe, in 2014, and there's not much in the record in this Byers case, and there the D.C. Circuit held that there was no improper ex parte communication. And, again, even in the tax court, there's just a small handful of cases where this has come up. You know, Drake, Moore, and industrial investors, which are cited in the party's brief. And in all of those cases, the comments, as even Mr. Johnson has acknowledged this morning, go more to the substance of the issues involved, the positions of the taxpayer. And in those cases, the result was that the tax court remanded it back to the Office of Appeals in order to have a new settlement officer and a new CDP hearing just, again, to make sure that the independence of that office is not in any way compromised. And as we point out in our brief, we believe those cases on their facts are distinguishable. And, again, in those three cases, the settlement officers, Office of Appeals, had denied a collection alternative. And the taxpayers in those cases were contesting whether or not the Office of Appeals' determination in denying those collection alternatives was an abuse of discretion. Here, again, that issue isn't involved. There's nothing that shows that the Office of Appeals' decision to sustain collection was compromised. And, again, we take the position that the tax court didn't abuse its discretion in sustaining that determination and allowing the collection to go forward by lifting and with respect to the proposed levy. One of my concerns here is—and I understand that the revenue procedure sort of sets this up—but one of my concerns is that the settlement officer is supposed to act independently of the revenue officer. That's why the whole scheme is set up. And if you have a situation in which a beef, so to speak, between the revenue officer and the taxpayer's representative plays itself out in the case notes, then one might have reason to question whether or not the settlement officer is actually acting independently. So why shouldn't we be concerned about that here in particular? Well, here in particular, I probably would suggest that just the comment uncooperative probably comes up more often than not in these cases. Either the taxpayers cooperate or, again, they don't. I wouldn't really describe it as a beef. Again, there's no dispute that taxpayers and their attorney had the responsibility as a practitioner before the Internal Revenue Service to provide requested financial information. That's under 31 CFR 10.20A1. So the duty was there to actually cooperate and to provide that information. Here, the revenue officer additionally provided taxpayers' attorney with a copy of Circular 230 at page 19, which again explains that Mr. Johnson had a duty to cooperate. Counsel, if I can ask you, doesn't the record indicate that the taxpayers did ultimately cooperate? It was just that initial kind of unscheduled, unannounced meeting where the documents were not provided. I mean, they were ultimately provided. Is that correct? Eventually, yes. And again, with respect to that meeting, it's typical IRS procedure in these cases to have a field visit. Again, taxpayers were undoubtedly unaware that when they filed their 2015 and 2016 returns that they did not pay their taxes. Is it typical for those to be unscheduled, unannounced sorts of visits? Yes. And here again, once the case did get to Settlement Officer Wirt, and I believe that was sometime November 20th. At that time, I believe the Settlement Officer, the record shows that he requested that Mr. Johnson and taxpayers provide certain information. And I do not believe at that first request that taxpayers and their representative were cooperative. I believe it was after a subsequent discussion requesting those documents that they were eventually provided. So the Settlement Officer on his own after that first meeting could have independently come to the conclusion that taxpayers weren't being cooperative. Here, there's no indication that they were forthright from the beginning in providing that documentation to establish that the IRS's administrative collection of those taxes were not proper. So again, we take the position that the tax court didn't abuse its discretion in sustaining the lien and proposed levy. And we respectfully request that this court affirm the decision of the tax court. Thank you. Thank you, Ms. Bradley. Mr. Johnson, I know you have some time, three minutes and seven seconds remaining for rebuttal. Please proceed when you're ready. I am ready, Your Honor. Before you start, I'd like to ask you about the section I asked your opposing counsel about. That's 2.033D, which says that discussions of the originating functions views concerning the level of cooperation are impermissible. My question to you is, are these two letters, this subsection uses the word discussions, subsection D. Subsection F uses the word communications. And I'm wondering, are these two letters, if this applies, are these two letters communications or are they discussions? Discussions seems to imply a back and forth consideration of and analysis of the level of cooperation. And Your Honor, I think I could take your point and make something in favor of my client, but actually I'm not quite sure maybe the decision was so intended by the revenue procedure. Perhaps the revenue procedure was just written before a time when it was possible to load up a document. I appreciate that that distinction may work in our favor, but I think the loading up of a document perhaps is not per se a problem. But again, it gets to the extent and the color in this situation. So I'm not so sure that the communication versus discussion line in the revenue procedure is really terribly. I respectfully, Your Honor, I know you're kind of going there. We wouldn't necessarily insist on that, I guess, is where I'm coming from. Well, do you think that subsection applies, though, as a prohibited communication in this case? Well, again, we're talking about a revenue procedure. I think Your Honor used the term regulation. It's something that's put out administratively by the IRS. And frankly, I'm not sure that sort of shoehorning each little piece of the contrary revenue procedure language in our position gets us to the answer. What gets us to the answer is just a gut feeling. Has a line been crossed where potentially we'll never know the intent of the revenue officer, but has a line been crossed objectively where it's possible that this appeals officer was tainted? And again, ex parte is all about appearances. It's about the taxpayers having the right to know that their situation was considered fairly. Your Honor, if I may just briefly, I do want to hit two things. Number one, as Ms. Bradley says, taxpayers are labeled cooperative or uncooperative. I've worked in this area for a long time. That's a very black and white distinction for IRS people. If you are an uncooperative taxpayer, you're a bad person. You're over in this category. If you're cooperative, you're over in that category. That is very much a judgment statement within tax practice. I'd also point out, Your Honor, may I have another 30 seconds just to make a few points since I was responding during most of the rebuttal time? I'm going to unmute. I'll add 15 seconds. Go ahead. I would just, first of all, with respect to our basis, I think you'll see that we had a legal basis there for not providing the documentation. We didn't feel the revenue officer had jurisdiction. And just briefly, the only other item I would add is with respect to that we did not contest the result. The appeals officer's result is subject to an abuse of discretion standard when the tax court is reviewing and making its decision. And so under an abuse of discretion standard, if this is not remanded back to an appeals officer for a new decision, frankly, we're going to lose in front of the U.S. tax court under that standard. That's all right. Thank you. Thank you to both of you for your very helpful oral arguments. The case will be submitted and the court will issue an opinion in due course.